UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

\* \* \*

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>DEVENDRA I. PATEL M.D., a.k.a.,<br>DEVENDRAKUMAR I. PATEL M.D.,<br><br>Defendant. | Case No. 3:17-cr-00114-LRH-CLB<br><br>ORDER |

Defendant Devendra I. Patel ("Patel") moves for a compassionate release (ECF No. 87) under 18 U.S.C. § 3582, which the Government opposes (ECF No. 91), to which Patel replied (ECF No. 92). For the reasons contained within this Order, the Court denies Patel's motion.

**I.      BACKGROUND**

Patel was a licensed physician in Elko, Nevada. Between June 2014 and June 2016, Patel prescribed controlled substances—specifically opioids—outside his professional practice and with no medical purpose in violation of 21 U.S.C. § 841(a)(1), (b)(1)(C) and § 846 and 21 C.F.R. 1306.04(a).

In November 2018, Patel pled guilty to distribution of a controlled substance in violation of 21 U.SC. § 841(a)(1) and (b)(1)(C), pursuant to a plea agreement. The Court subsequently sentenced Patel to 37 months in prison, followed by 3 years supervised release, and imposed a $500,000 fine. He was granted until October 3, 2019, to surrender to the Bureau of Prisons (BOP) and is serving his sentence in FCI Sheridan, a medium security prison, in Sheridan, Oregon.

## II. LEGAL STANDARD

Under 18 U.S.C. § 3582(c), "the court may not modify a term of imprisonment once it has been imposed," except under specified conditions. For a motion brought under § 3582(c)(1)(A)(i), those specified conditions include the exhaustion of administrative remedies or the Bureau of Prison's inaction for thirty days. The 30-day requirement has been met in this case.

18 U.S.C. § 3582(c)(1)(A) provides:

> [T]he court, . . . may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that –
>
> (i) extraordinary and compelling reasons warrant such a reduction; or
>
> (ii) the defendant is at least 70 years of age, has served at least 30 years in prison, pursuant to a sentence imposed under section 3559(c), for the offense or offenses, for which the defendant is currently imprisoned, and a determination has been made by the Director of the Bureau of Prisons that the defendant is not a danger to the safety of any other person or the community, as provided under section 3142(g);
>
> and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission[.]

The relevant United States Sentencing Guidelines policy statement provides that the Court may reduce a term of imprisonment if the Court determines that:

> (1)  (A) extraordinary and compelling reasons warrant the reduction; or
>
>      (B) the defendant (i) is at least 70 years old; and (ii) has served at least 30 years in prison pursuant to a sentence imposed under 18 U.S.C. 3559(c) for the offense or offenses for which the defendant is imprisoned;
>
> (2) the defendant is not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. 3142(g); and
>
> (3) the reduction is consistent with this policy statement.

U.S. SENTENCING GUIDELINES MANUAL § 1B1.13 (U.S. SENTENCING COMM'N 2018). Extraordinary and compelling reasons include (1) the medical condition of the defendant, (2) the age of the defendant, (3) family circumstances, or (4) any other extraordinary or compelling reason, as determined by the Director of the Bureau of Prisons. *Id.* § 1B1.13 app. n.1.

The Court, in ruling upon a motion for compassionate release, may reduce an imposed sentence if it determines that "extraordinary and compelling reasons warrant such a reduction." In

2

addition to this finding, the Court must also consider the sentencing factors described in 18 U.S.C. § 3553(a) to the extent that they are applicable and decide if a sentence reduction would be "consistent with applicable policy statements issued by the Sentencing Commission." 18 U.S.C. § 3582(c)(1)(A).

**III.   DISCUSSION**

First, the Court finds that extraordinary and compelling reasons do not exist in this case, under any of the four specific provisions. Patel does not qualify under the age provision: while he is 61 years old and suffers from several health conditions, he has not served either ten years or seventy-five percent of his term of imprisonment.  Patel also does not qualify under the family circumstances provision: there is no indication that he needs to be released from prison to either care for an ailing spouse or minor children.

Patel argues that extraordinary and compelling reasons exist because hyperinflation of the lungs is consistent with COPD.

The Court has requested, received, and taken into consideration the entirety of Patel's prison medical records through November 2, 2020. While they show that Patel suffers from elevated blood pressure, high cholesterol and COPD, they further show that he has been treated regularly and successfully by medical staff and that his health concerns presently appear stable and under control.

Patel is serving his thirty-seven-month prison sentence at FCI Sheridan. There is no indication that FCI Sheridan is experiencing a substantial outbreak of the coronavirus. Bur. of Prisons, *COVID-19*, https://www.bop.gov/coronavirus/ (last visited Nov. 17, 2020). The BOP reports that there are 1434 inmates at Sheridan: 1078 at FCI Sheridan and 356 at FDC Sheridan. Of those 1434 inmates, none are reported as suffering from the COVID-19 virus. FCI Sheridan is following BOP required procedures required to control the spread of the virus and, while an outbreak is not entirely preventable, the steps taken by BOP appear to have diminished the threat of a COVID spread at Sheridan. Therefore, on balance the Court finds that extraordinary and compelling reasons do not exist in this case.

///

1    Lastly, the section 3553(a) factors do not warrant release.

2    Patel was a licensed physician in Elko, Nevada. Between September 2014 to September 2017, Patel prescribed prescriptions for controlled substances, including fentanyl, hydrocodone and oxycodone, for his patients, outside the usual course of professional practice and without a legitimate medical purpose. These were included within 22,085 total prescriptions (averaging 613 per month) and total dosage units of 1,286,144. More specifically, these included 204 prescriptions for fentanyl, 3,616 prescriptions for hydrocodone, and 2,881 prescriptions for oxycodone. In all, Patel distributed a total of more than 10,800 mgs of oxycodone/hydrocodone.

The consequences of Patel's narcotic and opioid prescriptions were telling. Referring to the Government's Sentencing Memorandum (ECF No. 32), the Court commented at sentencing:

> …Deaths from prescription opioids have more than quadrupled since 1999.
>
> Dr. Patel is but one of these doctors nationwide who have contributed to this opioid crisis by overprescribing medically unnecessary pain medication.
>
> If one turns to Government Exhibit 1, the 35-year-old man who died of an overdose – and I should say that It appears it was self-induced, a suicide, but this happened in Elko, Nevada.
>
> It's documented on February 15th, 2016, his last prescription was from Dr. Patel on February 12th, 2016, and was for 75 tablets of Oxycodone which followed a prescription the month before of 75 tablets of Oxycodone, in the month before that of 75 tablets, 60 and 90 tablets in November and September. But then, prior to that time, 100 tablets in August of 2015, 120 tablets in July of 2015, 120 in June, 120 in May, 120 in April, 120 in March, and over a hundred every month going back to October of 2014.
>
> He's found dead on the bathroom floor in the home where his mother has been taking care of him. He's 35 years old. He clearly had other medical problems, no question that he had extreme neck pain due to some kind of a physical injury related to playing baseball. He suffered from some mental problems.
>
> But his mother said she felt like he was on something whenever he was with her. This is his mother who is living with and providing the necessary care for her 35-year-old son.
>
> At the scene where he's found dead on the floor are five empty bottles of Oxycodone, the last one with the prescription date of December 14th, 2015. He received a new round of prescriptions just two days earlier from Dr. Patel.
>
> His mother said he was angry and volatile. He apparently had been told he would have to leave Dr. Patel's care. She checked on him that day and found him deceased having committed suicide by overdosing.

4

***

>…there's a suggestion here that this doctor, Dr. Patel, had reached a point where he was so massively prescribing these prescriptions, 22,085 of them, to a number of patients who shouldn't have had a significant number of them, and the purpose for which – and nuclear stress tests that were not even being properly conducted to very innocent patients who would have no idea that there was no validity to either the test or the prescription. I don't know how many, but there certainly were a significant number who fell within that category.
>
>A doctor who obviously was well meaning, but behind it all was a doctor who was accumulating a very sizeable wealth during the course of this practice as reflected in the presentence report, a doctor who had accumulated a net worth of roughly $6 million which didn't include some of what his wife may or may not have established in her own right.
>
>I don't have that breakdown in front of me, but what I do have is a report which indicates a very sizeable wealth which had been accumulated as a product of the practices which we are dealing with in this courtroom that grow (sic) out of the opioid epidemic and crisis facing America today, a significant part were these drugs that were being prescribed by this physician who was being counted on for appropriate medical care by patients in Elko, Nevada, a doctor who admittedly prescribed these drugs without a medical purpose and for nothing more than to profit from vulnerable patients.

The Court thereupon imposed a prison sentence on defendant Patel, a guideline sentence of 37 months in custody and imposed a $500,000 fine. Restitution in the amount of $853,101 was recommended in Patel's presentence investigation report arising from Medicare and Medicaid payments to Patel from stress testing, much of which was excessive. Because the excessive stress testing could not be separated from stress testing which may have been warranted, the Court did not order restitution. However, it was undisputed that Patel had received these funds.

Based on the presentence investigation report to the Court, at sentencing Patel had a total net worth of more than $5.9 million. The $500,000 fine imposed by the Court was a significant sentencing factor to the Court to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense. *See* 18 U.S.C.§ 3553(a)(2)(A). After receiving defendant's motion, the Court requested the parties to inform the Court concerning the outstanding balance of the $500,000 fine, its payment history, and any delays or challenges

5

related to collection. In the one and one-half years since the fine was imposed, there have been no voluntary payments by Patel.[1]

As noted above, the § 3553(a) factors do not warrant early release. Patel's medical conditions are under control, he has served only 13.5 months of his total 37-month sentence, and with a net worth in excess of $5.9 million, he has made no voluntary payments toward the $500,000 fine. The Court finds that Patel should serve the full sentence imposed against him to reflect the seriousness of his offense, to promote respect for the law, and to provide just punishment for his offense committed against innocent patients in Elko, Nevada.

## IV.   CONCLUSION

IT IS THEREFORE ORDERED that defendant's Motion for Compassionate Release (ECF No. 87) is **DENIED.**

IT IS SO ORDERED.

DATED this 18th day of November, 2020.

_____
LARRY R. HICKS
UNITED STATES DISTRICT JUDGE

---

[1] It appears that the Government has attempted to garnish a joint account of Dr. Patel and his wife in September of 2019 in the amounts of $100 and $23,882.47. Government records do not show receipt or credit for these amounts at this time.

6